UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LITTLE ITALY OCEANSIDE
INVESTMENTS, LLC,

      Plaintiff,                                  Case No. 14-cv-10217
                                                Hon. Matthew F. Leitman

v.

UNITED STATES OF AMERICA,

      Defendant.

_____/

## OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION TO DISMISS AS TO COUNTS I AND III AND (2) GRANTING DEFENDANT SUMMARY JUDGMENT AS TO COUNT II

In September 2008, the Internal Revenue Service (the "IRS") determined that Plaintiff Little Italy Oceanside Investments, LLC ("Little Italy"), was the alter ego of an individual taxpayer named Remo Polselli ("Polselli"). In an attempt to collect taxes owed by Polselli, the IRS filed a Notice of Federal Tax Lien (the "Tax Lien") against a parcel of real property that Little Italy owned in Broward County, Florida (the "Florida Property"). In 2013, Little Italy sold the Florida Property, and a portion of the proceeds went to the IRS to satisfy the Tax Lien. After that sale, Little Italy filed this action against Defendant the United States of America. Little Italy seeks to quiet title to the property, seeks a refund of the amounts paid to the IRS from sale of the Florida Property, and claims damages as a result of a due

process violation.  For the reasons explained below, Little Italy is not entitled to any of the relief it seeks.

## RELEVANT FACTUAL BACKGROUND

Little Italy is a Florida limited liability company.  (*See* Amended Complaint, ECF #15 at ¶1; *see also* Polselli Affidavit, ECF #28-2 at ¶1.)  Since 2005, Polselli has been Little Italy's sole member. (*See* Polselli Aff. at ¶1, Pg. ID 195.)  On or about April 29, 2008, Little Italy filed an annual report with the Florida Secretary of State in which Little Italy listed both its principal place of business and it mailing address as: 40800 Woodward Avenue, Bloomfield Hills, MI 48304. (*See* Little Italy Annual Report, ECF #28-3.)  The annual report also identified Polselli as Little Italy's managing member and provided the same Bloomfield Hills address for him.  (*See id.*)  The report listed attorney Leonard Zedeck ("Zedeck") of Sunrise, Florida as Little Italy's registered agent.  (*See id.*)

By September of 2008, Polselli owed the IRS $555,749.06 in back taxes and associated charges.  In an effort to collect that amount, IRS Revenue Agent Linda Stamey ("Agent Stamey") prepared the Tax Lien which stated, in relevant part, "there is a lien in favor of the United States on all property and rights to property" belonging to Little Italy.  (ECF #25-1 at 3, Pg. ID 165.)  The IRS sought to collect Polselli's debt from Little Italy because the IRS believed that Little Italy was Polselli's alter ego. (*See id.* at 1, Pg. ID 163.)

2

On September 26, 2008, Agent Stamey mailed Little Italy a Notice of Federal Tax Lien Filing – Nominee or Alter Ego (the "Lien Notice").  (*See* Declaration of Agent Stamey, ECF #25 at ¶10, Pg. ID 161.)  The Lien Notice provided as follows:

> You have been identified as the nominee or alter-ego for Remo Polselli.  This letter is to inform you that we have filed a Notice of Federal Tax Lien.
>
> You have the right to appeal this decision.  We explain your rights in the enclosed Publication 1660.
>
> There may be other ways that we can resolve this issue.  Contact [Agent Stamey] for further information.
>
> One option you have is to request a Certificate of Discharge from the Federal Tax Lien.  However, before we will issue a discharge, you must pay the amount due or post a bond guaranteeing payment.  The enclosed Publication 783, provides information on how to request a certificate of discharge.
>
> We will issue a Certificate of Release of Federal Tax Lien within 30 days after you pay the full amount due or within 30 days after we accept a bond guaranteeing payment.

(ECF #25-1 at 1, Pg. ID 163.)

Agent Stamey sent the Lien Notice to Little Italy at the Bloomfield Hills address it shared with Polselli.  (*See* Agent Stamey Decl. at ¶10, Pg. ID 161.)  She

3

used that address because Polselli "was the taxpayer for purposes of" Little Italy,[1]

and the IRS's records "indicate[d] that Polselli never used a Florida address for

[Little Italy] or anyone on its behalf." (*Id.* at ¶¶7, 9; Pg. ID 161.)

Also on September 26, 2008, Agent Stamey sent a Notice of Additional

Federal Tax Lien Filing to both Polselli personally and to attorney Maurice Rose,

who had been identified as having power of attorney for Polselli (the "Additional

Lien Notices"). (Stamey Dec. at 11.)  The Additional Lien Notices provided:

> We have filed a Notice of Federal Tax Lien in Broward
> County, FL.  The enclosed Form 668(Y), Notice of
> Federal Tax Lien, contains the type of tax, the tax period
> and the initial amount of the debt.
>
> The lien attaches to all property you currently own and to
> all property you may acquire in the future.  It also may
> damage your credit rating and hinder your ability to
> obtain additional credit.
>
> We'll issue a Certificate of Release of Notice of Federal
> Tax Lien within 30 days after you pay the full debt or
> after we accept a bond guaranteeing payment of the
> amount owed.  To get your current balance, contact
> [Agent Stamey].
>
> We've enclosed Publication 1450, *Instructions on
> Requesting a Certificate of Release of Federal Tax Lien.*

---

[1]  Agent Stamey explained that when a single-member limited liability company
like Little Italy does not make an election to be taxed as a corporation or as an S-
corporation, the taxpayer is the sole member of the limited liability company. (*See*
Stamey Decl. at ¶5, Pg. ID 160.)  Agent Stamey stated that Little Italy did not
make an election to be taxed as a corporation or an S-corporation. (*See id.*)

If you have any questions, please phone [Agent Stamey].

(ECF #25-1 at 2-5; Pg. ID 164-67.)  Agent Stamey enclosed a copy of the Tax Lien with the Additional Lien Notices. (*See id.*)

On October 1, 2008 – after the IRS mailed the Lien Notice to Little Italy and the Additional Lien Notices to Polselli and Rose – the IRS filed the Tax Lien in Broward County.  (*See* Stamey Decl. at ¶13, Pg. ID 162.)  The IRS filed a duplicate of the Tax Lien in Broward County the next day.  (*See id.*)

Polselli says that he never received the Lien Notice or the Additional Lien Notices, and he likewise denies that Zedeck (Little Italy's registered agent at the time) ever received the notices. (*See* Polselli Aff. at ¶¶3-7, Pg. ID 195.)  Polselli claims that he first learned about the Tax Lien at some undefined point "in late 2013," just as Little Italy was preparing to close on the sale of the Florida Property. (*Id.* at ¶4, Pg. ID 195.)

According to Little Italy and Polselli, the buyers of the Florida Property demanded a complete release of the Tax Lien prior to closing on the sale, and "time was of the extreme essence in completing" the sale transaction. (Am. Compl. at ¶¶11-12, Pg. ID 68; *see also* Polselli Aff. at ¶7, Pg. ID 195.)  Little Italy says that the only way it could obtain the release required by the buyer in time to complete the closing was to provide full payment on the Tax Lien from the closing proceeds. (*See* Am. Compl. at ¶¶11-12, Pg. ID 68.)  And it did so.  It paid the IRS

5

$784,853.57 – the original $555,749.06, plus additional charges that had accrued since 2008 – from the closing proceeds. (*See id.* at ¶10, Pg. ID 68.)

## PROCEDURAL HISTORY

Little Italy filed its original Complaint in this action on January 17, 2014. (*See* ECF #1.) Little Italy named "the United States of America – specifically acting through the Internal Revenue Service, Department of Treasury," as the Defendant. (*Id.* at ¶2.) The original Complaint contained a quiet title claim (the "Quiet Title Claim") and a claim that the United States violated Little Italy's due process rights (the "Due Process Claim"). (*See id.*)

The United States moved to dismiss the original Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (*see* ECF #11), and the Court heard argument on that motion. Following the hearing, the Court directed Little Italy to file an Amended Complaint (*see* ECF #14), and Little Italy did so. (*See* ECF #15.)

Little Italy's Amended Complaint asserted the same Quiet Title and Due Process Claims as in the original Complaint (supported by a few additional factual allegations) and added a new claim for a refund of the monies paid to the IRS from the closing on the sale of Little Italy's real property (the "Refund Claim"). The United States again moved to dismiss under Rules 12(b)(1) and 12(b)(6). (*See* ECF #16.)

6

At that point, the Court asked the American College of Tax Counsel (the "College") to file an amicus brief that would provide the Court with an additional perspective on the issues for decision. (*See* ECF #19.) The College thereafter filed its brief (*see* ECF #22),[2] and the United States responded to that brief. (*See* ECF # 24). The United States attached to its response evidentiary materials that went beyond the allegations in Little Italy's Amended Complaint. These materials consisted of a Declaration from Agent Stamey and copies of the Tax Lien, the Lien Notice, and the Additional Lien Notices. (*See* ECF #25 and attachments.)

Because the United States submitted the additional evidentiary materials, the Court issued a Supplemental Notice of Hearing in which it informed the parties that was "inclined to … treat [the United States' pending motion to dismiss under Rules 12(b)] as one for summary judgment under Rule 56." (ECF #26 at 2, Pg. ID 178.) The Court added, however, that it would give Little Italy "an opportunity at the June 15, 2015, hearing to argue that the Court should exclude [the materials submitted by the United States] and confine its analysis to Rule 12(b)…." (*Id.*) Finally, the Court advised Little Italy that it would be given (1) "a reasonable opportunity" at the upcoming hearing "to present all material that [would be] pertinent" to the United States' motion if the motion were treated as one for

---

[2] The Court thanks the College for its excellent and timely work on this case. The thorough and well-written brief filed by the College substantially aided the Court in its consideration of the issues for decision.

summary judgment under Rule 56 and/or (2) an opportunity to explain "why it needs additional time to present all material that is pertinent…." (*Id.*)

Little Italy did not present any additional pertinent material at the hearing. It asked for additional time to gather and submit such material, and the Court granted that request. The Court also instructed Little Italy that it could file a Rule 56(d) affidavit explaining why it needed yet more time to gather information to appropriately respond to the United States' motion.

Little Italy filed one last supplemental brief. (*See* ECF #28.) Little Italy attached evidentiary materials to the brief, including an affidavit from Polselli, an Annual Report it filed with the Florida Secretary of State, and an excerpt from an IRS manual. Little Italy did not file a Rule 56(d) affidavit stating that it needed additional time to gather and submit other evidentiary items that were then unavailable.

## GOVERNING LEGAL STANDARDS

### A. The Quiet Title and Refund Claims

The United States seeks dismissal of Little Italy's Quiet Title and Refund Claims pursuant to Rule 12(b)(1). (*See* ECF #16 at 1-2, Pg. ID 73-74.) Rule 12(b)(1) provides for dismissal when a court lacks subject-matter jurisdiction over a claim. *See* Fed. R. Civ. P. 12(b)(1). In considering a 12(b)(1) motion, a court may consider matters outside the pleadings. *See Cartwright v. Garner*, 751 F.3d

752, 760 (6th Cir. 2014).  The plaintiff bears the burden of establishing that subject matter jurisdiction exists.  *See Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014).

## B. The Due Process Claim

The United States seeks dismissal of Little Italy's Due Process Claim pursuant to Rule 12(b)(6).  In general, a court may not consider matters outside of the pleadings when addressing a motion under Rule 12(b)(6).  *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001).  As explained above, the United States has submitted in support of its motion evidentiary materials outside the pleadings, and the Court gave Little Italy two opportunities – at the hearing on the motion and in a supplemental filing – to present additional material that is pertinent to the motion.  Under these circumstances, the Court may treat the United States' motion to dismiss the Due Process Claim as one for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d). The Court has chosen to do so.

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted).  When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.*  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be

insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252.  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252.  Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## ANALYSIS

### A. The Quiet Title Claim

Little Italy's Quiet Title Claim (Count I in the Amended Complaint) purports to seek to quiet title to the Florida Property.  (*See* Am. Compl. at 3.)[3] Little Italy alleges that the IRS wrongly treated Little Italy as Polselli's alter ego and that the IRS "lacks authority to claim any attachment" to the Florida Property based upon Polselli's indebtedness.  (*Id.* at ¶¶7-8, 15.)  Little Italy further alleges that the IRS wrongly "compelled" Little Italy to satisfy Polselli's debt from the proceeds of the sale of the Florida Property.  (*Id.* at ¶10.)

The United States contends that it has sovereign immunity from the Quiet Title Claim and, thus, this Court lacks subject-matter jurisdiction over the claim.

---

[3]  Paragraph three of the Amended Complaint states: "This is an action to quiet title to certain property on which Defendant has claimed a lien through which it has improperly collected $784,853.57."  (Am. Compl. at ¶3, Pg. ID 67.)  The property fitting that description is the Florida Property.

(*See* ECF #16 at 7-9, Pg. ID 79-81.)   The United States invokes the settled rule that, as the sovereign, it may not be sued absent its express consent.   *See, e.g., United States v. Testan*, 424 U.S. 392, 399 (1976).   The United States notes that such consent must be "unequivocally expressed" by Congress and is to be "strictly construed in favor of the United States." *United States v. Idaho*, 508 U.S. 1, 6-7 (1993).   The terms of the United States' consent define this court's jurisdiction. *See, e.g.*, *Stocker v. United States*, 705 F.3d 225, 230 (6th Cir. 2013).

Little Italy acknowledges that the United States may not be sued without its express consent, but it insists that the United States has provided such consent for suits to quiet title.   (*See* ECF #17 at 4-9, Pg. ID 94-99.)   Little Italy says that consent is found in 28 U.S.C. § 2410(a)(1), which provides that (subject to certain conditions) "the United States may be named as a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter to quiet title … to real or personal property on which the United States has or claims a mortgage or other lien."   While this statute undeniably provides the United States' consent to be sued in quiet title actions, it does not save Little Italy's Quiet Title Claim because the consent does not extend to a plaintiff in Little Italy's circumstances.

Little Italy may not bring its Quiet Title Claim pursuant to § 2410 because at the time it filed this action, Little Italy did not claim to have any interest in the

11

Florida Property.  Indeed, it is well-settled that a "§ 2410 plaintiff must be able to claim some presently held property interest of its own to bring a § 2410 quiet title action." *United States v. Wooley*, 2003 WL 21790346 at *1 (D. Neb. 2003) (collecting cases).   Stated another way, "[s]tanding under [§ 2410] is based on the presumption that the petitioner himself is making a claim of ownership to the property for which title is to be quieted." *Matter of Coppola*, 810 F.Supp. 429, 432 (E.D.N.Y. 1992).

Here, Little Italy specifically alleged that it "completed the sale" of the Florida Property to "an unrelated buyer" before bringing suit.  (Am. Compl. at ¶9.) Little Italy did not allege that it maintained any post-sale interest in the Florida Property.  Little Italy's attempt to quiet title to the Florida Property under § 2410 thus fails as a matter of law.  *See, e.g., Shaw v. United States*, 331 F.2d 493, 496-98 (9th Cir. 1964) (dismissing quiet title action under § 2410 because plaintiff failed to assert invasion of her own property interest); *Coppola, supra* (rejecting party's attempt to invoke § 2410 where party maintained that it had no property interest in the property whose title the party sought to quiet).

The decision of the United States Court of Appeals for the Ninth Circuit in *E.J. Friedman Co., Inc. v. United States*, 6 F.3d 1355 (9th Cir. 1993), is particularly instructive here.  In that case, Ninth Circuit held that the plaintiff could

not bring an action under § 2410 to quiet title to eleven lots that it had sold under a

workout agreement prior to bringing the action:

> [Plaintiff] also seeks to quiet title to the eleven homes
> sold under the workout agreement. However, [Plaintiff]
> has 'no property interest of its own' in these properties.
> Accordingly, § 2410 does not permit [Plaintiff] to bring
> an action to quiet title to the [eleven] homes sold under
> the workout agreement.

*Friedman*, 6 F.3d at 1358 (internal punctuation and citations omitted). Little

Italy's position with respect to the Florida Property is exactly the same as the

position of the plaintiff in *Friedman* with respect to the eleven lots: before filing

suit, both Little Italy and the plaintiff in *Friedman* sold their interests in the

property at issue and ceased to claim an interest in the property. And just like the

plaintiff in *Friedman*, Little Italy may not invoke the United States' consent to suit

under § 2410.

Little Italy counters that the decision of the United States Court of Appeals

for the Third Circuit in *Kabakjian v. United States*, 267 F.3d 208 (3d Cir. 2001),

supports Little Italy's right to sue the United States to quiet title under the

circumstances presented here. In *Kabakjian*, the government seized and sold the

plaintiffs' property in order to recoup unpaid income taxes. The plaintiffs sued the

government to quiet title after the tax sale had been completed, after the plaintiffs'

six-month period to redeem their interest in the property had expired, and after the

government conveyed the plaintiffs' property to a third-party purchaser. The Third

13

Circuit nonetheless allowed the plaintiffs to proceed under § 2410.  Little Italy insists that *Kabakjian* stands for the proposition that a plaintiff may sue under § 2410 even if it does not own or claim a present interest in the property at issue.

The Court disagrees for two reasons.  First, the plaintiffs in *Kabakjian* may, in fact, have claimed an interest in the property at the time they sued the United States to quiet title.  The Third Circuit's decision makes clear that the plaintiffs were not the record owners of the property at the time they sued, but the decision does *not* indicate whether the plaintiffs were nonetheless claiming an interest in the property.  Second, and more importantly, there is no indication that the Third Circuit considered the general rule that a plaintiff must claim an interest in the relevant property in order to sue the United States under § 2410, and there is certainly no suggestion in the decision that the Third Circuit intentionally departed from, or rejected, the rule.  Indeed, there is no indication that the United States invoked the rule (which may indicate that the plaintiffs *did* claim an interest in the property when they sued) or focused the court's attention on it in any way.  Moreover, the key issue for decision in *Kabakjian* was whether the district court retained jurisdiction to hear the suit under § 2410 once the United States filed a certificate of release of the tax lien.  For all of these reasons, the Court declines to read *Kabakjian* as authority for the proposition that a plaintiff may sue the United

14

States under § 2410 even if the plaintiff does not claim a current interest in the property.

Little Italy's claim to quiet title under § 2410 fails for one additional and independent reason: Little Italy is not seeking to determine who owns title to the Florida Property. Indeed, Little Italy has never disputed that the buyer of the Florida Property currently holds clear title to the property. And "because there is no title in dispute" with respect to the Florida Property, Little Italy's claim "is not a quiet title action within the immunity waiver of section 2410…." *Raulerson v. United States*, 786 F.2d 1090, 1091-92 (11th Cir. 1986) (rejecting a plaintiff's effort to sue under § 2410 because there was "no controversy as to who has title to th[e] property" and because the plaintiff's "suit does not seek a determination of *who* owns" the property) (emphasis in original).

In sum, Little Italy may not invoke the United States' consent to suit in § 2410, and for that reason Little Italy's Quiet Title Claim is barred by the sovereign immunity of the United States. The Court therefore lacks subject-matter jurisdiction over the claim, and it must be dismissed. *See, e.g.*, *Raulerson*, 786 F.2d at 1092.

## B. The Due Process Claim

In its Due Process Claim (Count II of the Amended Complaint), Little Italy alleges that its "Constitutional Due Process rights have been violated as it has been

deprived of its property though governmental action without any hearing, process, or opportunity to appeal. *Fuentes v. Shevin*, 407 U.S. 67 (1972)." (Am. Compl. at ¶21, Pg. ID 70.) Little Italy claims that it never had a sufficient "statutory remedy to address" (1) the IRS' determination that it (Little Italy) was Polselli's alter ego and (2) the filing of the Tax Lien against the Florida Property. (*Id.* at 19.) But Little Italy did have such a remedy, and the remedy satisfies the constitutional requirements for due process.

"In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). When the government deprives a person of a property interest, "[p]rocedural due process generally requires that the state provide a person with notice and an opportunity to be heard." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005). The opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

However, "due process does not *always* require the state to provide a hearing *prior* to the initial deprivation of property." *Squire v. Coughlan*, 469 F.3d 551, 558 (6th Cir. 2006) (citing *Parratt v. Taylor*, 451 U.S. 527, 540 (1981)) (emphasis in

original).  For instance, the United States Court of Appeals for the Sixth Circuit has recognized that in the tax context, a post-deprivation hearing satisfies procedural due process.  *See Morris v. United States*, 540 Fed. App'x 477, 479 (6th Cir. 2013) (collecting cases).

Here, the alleged deprivation was the IRS' filing of the Tax Lien on the Florida Property in Broward County, Florida.  (*See, e.g.*, Am. Compl. at ¶19.) Little Italy had two post-deprivation procedures available to it if it wished to challenge the Tax Lien and/or the basis for the lien (i.e., the IRS' determination that Little Italy was Polselli's alter ego).  Little Italy could have filed a quiet title action under § 2410 before it sold the Florida Property or, as discussed in Part C, *infra*, it could have sought a certificate of discharge of the Tax Lien under 26 U.S.C. § 6325(b)(4).  Little Italy had more than five years in which to exercise these remedies – from the time that the IRS filed the Tax Lien in October 2008 through the sale of the Florida Property in late 2013.

Little Italy counters that these remedies were illusory because it never actually received notice of the Tax Lien.  (*See* ECF #17 at 11-12, Pg. ID 101-02.) But the IRS *did* provide Little Italy notice of the Tax Lien in a manner that satisfies the Due Process Clause.

Notice satisfies due process if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action...."

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).   Notice sent by regular mail to a person's primary address is generally sufficient.   *See Ming Kuo Yang v. City of Wyoming, Michigan,* --- F.3d ---, 2015 WL 4174760, at *3 (6th Cir. July 13, 2015); *see also Mota-Roman v. Holder*, 331 Fed. App'x 379, 383 (6th Cir. 2009).

Here, the IRS mailed three notices.  The IRS mailed the Lien Notice to Little Italy at the Bloomfield Hills address that it shared with Polselli (the same address that Little Italy listed as its principal place of business and its mailing address in its annual report).  It did so because Polselli was the sole member of Little Italy and, thus, "was the taxpayer for purposes of" Little Italy.  (Stamey Decl. at ¶5.)  The IRS also mailed an Additional Lien Notice to Polselli's personal address.  And the IRS mailed an Additional Lien Notice to Maurice Rose, who had been identified as having power of attorney for Polselli.  The Court has little difficulty concluding that all of these notices were reasonably calculated to reach Little Italy and Polselli.

Little Italy insists that the IRS did not satisfy due process because it never actually received the notices.  (*See* ECF #28.)  But under the Due Process Clause, the key issue is not whether the intended recipient actually receives the notice, but whether the government *transmitted* the notice in a way reasonably calculated to reach the intended recipient.  *See Yang*, 2015 WL 4174760, at *3.  Thus, "[t]he fact

18

that [Little Italy] may not have received the [notices] does not negate the constitutional adequacy of the attempt to accomplish actual notice." *Trimble v. U.S. Dept. of Agriculture*, 87 Fed. App'x 456, 458 (6th Cir. 2003).

Because the United States provided Little Italy adequate notice of, and an opportunity to challenge, the Tax Lien, Little Italy's Due Process Claim fails as a matter of law.

## C. The Refund Claim

In its Refund Claim (Count III of the Amended Complaint), Little Italy seeks "a refund of the full amount it was forced to pay through the overzealous and improper collection activities of the United States." (Am. Compl. at ¶26.) Little Italy purports to bring this claim under "28 U.S.C. 1346(a)(1) as expounded by the United States Supreme Court in *United States v. Williams*, 514 U.S. 527 (1995)." (*Id.* at ¶24.) Section 1346(a)(1) grants jurisdiction to federal district courts to hear civil actions challenging certain tax collections by the IRS, and the Supreme Court in *Williams* did suggest that a claim like Little Italy's may fall within that section. *See Williams*, 514 U.S. at 529. But subsequent developments make clear that Little Italy may not proceed under § 1346(a)(1) in the circumstances presented here. Since neither § 1346(a)(1) nor any other federal statute authorizes Little Italy's Refund Claim against the United States, the claim is barred by the government's sovereign immunity.

19

Section 1346(a)(1) grants district courts original jurisdiction over:

> [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

28 U.S.C. § 1346(a)(1).

In *Williams*, the Supreme Court interpreted § 1346(a)(1) to allow a plaintiff to bring a refund claim against the IRS for taxes paid in order to release a lien that the IRS placed on property due to the nonpayment of taxes by a third party. In that case, Lori Williams ("Williams") acquired her ex-husband's interest in their jointly-owned home when the couple divorced. Unbeknownst to Williams, the IRS claimed more than $41,000 in tax liens on the property relating to the ex-husband's failure to pay certain business taxes for which he was personally liable. Williams did not learn of the liens until she attempted to sell the property, at which point Williams authorized disbursement of sale proceeds to satisfy the lien so that she could convey clear title. Williams then sued the United States for a refund of the taxes pursuant to § 1346(a)(1). The government argued that the federal court lacked jurisdiction over Williams' claim because § 1346(a)(1) "authorizes actions only by the assessed party" – in this case, Williams' ex-husband. *Williams*, 514 U.S. at 531. The Supreme Court disagreed. The Supreme Court noted that

20

Williams "had no realistic alternative to payment of a tax she did not owe," and that the "government's strained reading of § 1346(a)(1) … would leave people in Williams' position without a remedy." *Id.* at 529, 535. Thus, the Supreme Court concluded that § 1346(a)(1) authorized Williams to bring her refund claim.

Following *Williams*, Congress amended the Internal Revenue Code in 1998 to provide a specific statutory remedy for persons in Williams' position. Specifically, Congress added 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4). These new provisions "enable an individual like Williams … to challenge a lien placed upon a plaintiff's property as a result of a tax liability incurred by another party." *Portsmouth Ambulance, Inc. v. United States,* 756 F.3d 494,499 (6th Cir. 2014). The Sixth Circuit has explained the effect of these amendments:

> Under the new statutory scheme, 26 U.S.C. § 6325(b)(4) requires the IRS to issue a certificate of discharge as a matter of right to third parties under specified circumstances. Pursuant to 26 U.S.C. § 6325(b)(4)(A), the third party has the right to obtain a certificate of discharge by applying to the Secretary of the Treasury for such a certificate and either depositing cash or furnishing a bond sufficient to protect the lien interest of the United States. The Secretary does not have the discretion to refuse to issue a certificate of discharge if this procedure is followed. After the property owner follows the procedure under 26 U.S.C. § 6325(b)(4)(A), the Secretary must refund the amount deposited or release the bond, to the extent that the Secretary determines that the taxpayer's unsatisfied liability giving rise to the lien can be satisfied from a source other than property owned by the third party, or the value of the interest of the United States in the property is less than the Secretary's

21

prior determination of its value. 26 U.S.C. § 6325(b)(4)(B).

Section 7426(a)(4) provides a judicial remedy for violations of § 6325(b)(4). The owner of the property has 120 days after the certificate is issued to challenge the Secretary's determination by bringing a civil action against the United States in federal district court. Id. § 7426(a)(4). If no action is filed within the 120–day period, the Secretary has 60 days to apply the amount deposited or collected on the bond, to the extent necessary to satisfy the unsatisfied liability secured by the lien and refund any amount which is not used to satisfy the liability. *Id.* § 6325(b)(4)(C). If an action is filed and the court determines that the value of the interest of the United States in the property is less than the value that the Secretary determined, the court will grant a judgment ordering the refund of the amount of the deposit or a release of the bond to the extent that the amount of the deposit or bond exceeds the value determined by the court. *Id.* § 7426(b)(5). The statute states clearly that "[n]o other action may be brought by such person for such a determination." *Id.* § 7426(a)(4). Plaintiffs must exhaust these administrative remedies prior to bringing suit for damages. *See id.* § 7426(h)(2).

*Munaco v. United States*, 522, F.3d 651, 654-55 (6th Cir. 2008) (footnotes omitted).

In light of these amendments, a third party – such as Little Italy – seeking a refund for payments made to satisfy another taxpayer's liability now has explicit administrative and judicial remedies. Specifically, the third party may obtain a certificate of discharge from the IRS pursuant to § 6325(b)(4). The third party may

then challenge the IRS's decision to impose the lien pursuant to § 7426(a)(4) by filing a claim within 120 days of the issuance of the certificate of discharge.

These new statutory remedies preclude a third party in Little Italy's position from maintaining a refund claim against the United States pursuant to § 1346(a)(1). That is exactly what the Sixth Circuit held in *Portsmouth Ambulance*, *supra*.  In that case, the IRS filed a notice of federal tax lien against Portsmouth Ambulance, Inc. as the alter ego of a company with outstanding tax liabilities.  Portsmouth Ambulance denied that it was the company's alter ego, but it did not obtain a certificate of discharge pursuant to § 6325(b)(4) nor challenge the lien pursuant to § 7426(a)(4).  Proceeds from a creditor's sale of Portsmouth Ambulance's assets were remitted to the IRS to satisfy the tax lien.  Portsmouth Ambulance then sued the IRS under § 1346(a)(4) for a refund.  The Sixth Circuit determined that Portsmouth Ambulance could not bring a § 1346(a)(4) claim because §§ 6325(b)(4) and 7426(a)(4) "provide[] the *exclusive* remedy for a third-party property owner … to obtain a refund for payments made to satisfy the tax liability of another entity."  *Portsmouth Ambulance*, 756 F.3d at 501 (emphasis added). Accordingly, the Sixth Circuit affirmed the dismissal of Portsmouth Ambulance's claim.  *See id.* at 504.  *See also Munaco*, 522 F.3d at 656 (federal courts "lack[] jurisdiction under § 1346(a)(1) to hear refund suits brought by third party real property owners who wish to challenge tax lien-related collections by the IRS and

23

who have not pursued the remedy provided to them by §§ 6325(b)(4) and 7426(a)(4)") (quoting *Four Rivers Invs., Inc. v. United States*, 77 Fed. Cl. 592, 603 (Fed. Cl. 2007)) (internal punctuation omitted).  *Portsmouth Ambulance* compels the conclusion that Little Italy may not seek a refund pursuant to § 1346(a)(4) because  §§ 6325(b)(4) and 7426(a)(4) provided the *sole* remedies available to Little Italy.[4]

Little Italy contends that it is not barred from maintaining its Refund Claim under § 1346(a)(4).  Little Italy relies on *Reaser v. United States*, 731 F.Supp.2d 681 (N.D. Ohio 2010), in support of its argument.  (*See* ECF #17 at 17-18, Pg. ID 107-08.)  But Little Italy simply ignores the fact that the Sixth Circuit expressly disapproved of *Reaser* in *Portsmouth Ambulance*.  *See Portsmouth Ambulance*, 756 F.3d at 502-03.  Little Italy's reliance on *Reaser* is unavailing.

For the reasons discussed above, the United States is immune from Little Italy's Refund Claim pursuant to § 1346(a)(4), and this Court therefore lacks subject-matter jurisdiction over the claim.  *See id.* at 504.

---

[4]  To the extent that Little Italy contends that the remedies in §§ 6325(b)(4) and 7426(a)(4) were not available to it because it did not have notice of the Tax Liens, that argument fails because the United States provided notice to Little Italy in a manner that complied with due process.  *See* Part B, *supra*.

## <u>CONCLUSION</u>

For the reasons discussed in this Opinion and Order, **IT IS HEREBY ORDERED** that the United States' Motion to Dismiss (ECF #16) is **GRANTED** as to the Quiet Title Claim (Count I) and the Due Process Claim (Count III).  **IT IS FURTHER ORDERED** that the United States is **GRANTED** summary judgment as to the Due Process Claim (Count II).  Little Italy's Amended Complaint (ECF #15) is **DISMISSED WITH PREJUDICE**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 14, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 14, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

25